Champney v. SSA                    CV-98-336-SD  02/10/99
                UNITED STATES DISTRICT COURT FOR THE

                   DISTRICT OF NEW HAMPSHIRE


Pamela Champney


     v.                              Civil No. 98-336-SD


Kenneth S. Apfel, Commissioner,
 Social Security Administration


                        O R D E R


     Pursuant to 42 U.S.C. § 405(g), plaintiff Pamela Champney

moves to reverse the Commissioner's decision denying her

application for Social Security Disability Insurance Benefits

under Title II of the Social Security Act, 42 U.S.C. § 423 (the

Act).[1]  Defendant objects and moves for an order affirming the

decision of the Commissioner.

_____

     [1]The court is compelled to address the inexcusable
carelessness displayed by plaintiff's memorandum of law.  Not
only does the document violate Local Rule 5.1(a) and (b), it is
so riddled with misspelled words and other grammatical errors
that, at times, the court found it nearly incomprehensible.  The
court is disappointed to receive such a document written by a
practicing member of the bar in behalf of a client.

## Background

Pursuant to Local Rule 9.1, the parties have filed a joint statement of material facts (document no. 9), which the court hereby incorporates.

## Administrative Proceedings

Champney filed an application for social security disability benefits on September 18, 1995, alleging an inability to work since October 31, 1994. Transcript of Record (Tr.) at 88-91. The Social Security Administration initially and upon reconsideration denied her application. Tr. 92-101, 121-122. On June 11, 1996, a de novo hearing was held before an Administrative Law Judge (ALJ), who also denied plaintiff's application. Tr. 9-20.

Applying the five-step, sequential evaluation process prescribed by 20 C.F.R. § 404.1520,[2] the ALJ found that (1) Champney has not engaged in substantial gainful employment since

---

[2]The ALJ is required to consider the following five steps when determining if a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity at the time of the claim; (2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents or prevented the claimant from performing past relevant work; (5) whether the impairment prevents or prevented the claimant from doing any other work. 20 C.F.R. § 404.1520 (1998).

October 31, 1994; (2) Champney suffers from severe chronic low back pain secondary to left sciatic nerve injury and by adjustment disorder with depressed mood secondary to chronic pain syndrome; (3) Champney does not have an impairment listed in or medically equal to the impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 (Appendix 1); and (4) Champney's impairments do not prevent her from performing her past work.

The ALJ also found that Champney's subjective complaints of pain were not credible and that application of Social Security Regulation (S.S.R.) 96-7p and 20 C.F.R. § 404.1529 supported a determination that the complainant has a sufficient residual functional capacity (RFC) to return to her former position.

On March 24, 1997, the Appeals Council affirmed the ALJ's decision, Tr. 4-5, thereby rendering the ALJ's decision the final decision of the Commissioner and one subject to judicial review.

## Discussion

### 1. Standard of Review

Following a final determination by the Commissioner, and upon timely request by a party thereto, the reviewing court "shall have the power to enter, upon the pleadings, and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the cause for a rehearing." 42 U.S.C.

3

§ 405(g) (1998). Findings of fact by the Commissioner, if supported by substantial evidence, shall be conclusive.[3] Id.; see also Irlanda Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

Accordingly, the Commissioner's decision to deny benefits will be affirmed unless "the [Commissioner] has committed a legal or factual error in evaluating a particular claim." Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

2. Plaintiff's Motion

Plaintiff challenges the ALJ's conclusions at steps three and four as erroneous. Specifically, at step three of the sequential evaluation process prescribed by 20 C.F.R. § 404.1520, the ALJ found that Champney did not have an impairment or combination of impairments that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations, Tr. 14, and at step four of the evaluation process, the ALJ found that despite Champney's medically determinable

---

[3]Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

4

severe impairments, she retained the RFC to return to her past relevant work. These issues will be treated in turn.

### a. Step Three of the Sequential Evaluation Process

#### i. Vertebrogenic Disorders

At step three of the sequential evaluation process, the burden of proof is on the claimant to prove the existence of a disability. 42 U.S.C. § 423(d)(5)(A); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (citation omitted); Dudley v. Secretary of Health and Human Services, 816 F.2d 792, 793 (1st Cir. 1987). To be found disabled at step three, the claimant must prove the existence of an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. "The listings describe impairments which are considered severe enough to prevent a person from doing any gainful activity, without considering vocational elements." 2 Social Security Disability Claims (Barbara Samuels) § 22:59, at 22-78. Thus, if the claimant meets a listing, the ALJ need not consider the next two steps. If, on the other hand, the claimant is found not to meet the criteria of an impairment listed in Appendix 1, the ALJ must move on to steps four and five. Determinations of whether an impairment meets or equals one listed in Appendix 1 must be made on medical evidence only. 20 C.F.R. § 404.1525(d).

Here, Champney alleges the existence of an impairment that satisfies section 1.05(C) of Appendix 1, which states in relevant part:

> 1.05 *Disorders of the Spine*
> . . .
> C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus [sic], spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
> 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
> 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.05(C). To demonstrate a spinal impairment listed in section 1.05(C), the claimant must have a diagnosed vertebrogenic disorder <u>and</u> must satisfy the conditions in subsections 1 and 2. <u>Id.</u>; 20 C.F.R. § 404.1525(d); <u>see also</u> <u>Martinez Nater v. Secretary of Health and Human Services</u>, 933 F.2d 76, 77 (1st Cir. 1991).

When the symptoms, signs, or laboratory findings of alleged impairment(s) do not exactly match those of a listed impairment, medical equivalence will be shown "if the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 1526(a). However, "[i]n no case are symptoms alone a sufficient basis for establishing the presence of a physical . . . impairment;" rather, the medical equivalence of an impairment listed in Appendix 1 must be based on "medical

6

evidence demonstrated by medically acceptable clinical and laboratory diagnostic techniques . . . ." S.S.R. 86-8, 1986 WL 68636, *4 (S.S.A.); see also 20 C.F.R. § 404.1526(b).

In finding that Champney's alleged impairments were not sufficiently severe to rise to the level of a presumptive disability contemplated by Appendix 1, the ALJ relied on the November 1995 report of Dr. Roger Hansen, an orthopedic surgeon, who reviewed Champney's records before examining her. Tr. 13. Here, Dr. Hansen's report must be viewed through the lens of the prescribed medical criteria of 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.05(C). In this context, Dr. Hansen's report indicates that Champney's lower back injury does not satisfy the severity requirement necessary to establish medical equivalency to an impairment listed in Appendix 1. 20 C.F.R. § 404.1525(d). Tr. 185-86.

Specifically, subsection 1 of section 1.05(c) requires significant limitation of motion; yet Dr. Hansen's report states that "[a]ll joints of the upper and lower extremities move through a full range of motion with no particular pain." Tr. 186. In regard to the neurologic criteria prescribed by section 1.05(c), Dr. Hansen's report indicates that "[h]er neurologic examination is entirely normal." Tr. 186. Therefore, neither the motor loss nor the sensory and reflex loss required by section 1.05(c)(2) of Appendix 1 has been met.

Accordingly, there is substantial evidence to support the ALJ's decision that Champney does not have an impairment or a combination of impairments listed in or medically equivalent to one listed in Appendix 1. Moreover, nothing is exhibited in the reports of the other treating or examining doctors, or elsewhere in the record, to indicate a legal or factual error sufficient to warrant reversal of the ALJ's decision on this issue. See Manso-Pizarro, 76 F.3d 15, 16 (1st Cir. 1996).

### ii. Affective Disorders

Champney also argues that the ALJ erred in not finding that she suffers from an affective disorder listed in section 12.04 of Appendix 1. To satisfy the predetermined criteria prescribed by section 12.04, an individual alleging disability due to an affective disorder must provide medical proof of at least two of the following adaptive disruptions:[4]

> 1. Marked restriction of activities of daily living;
> or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which

---

[4]The term "marked" is defined by the C.F.R. as "a standard for measuring the degree of limitation, it means more than moderate, but less than severe." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).

cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. pt. 220, app. 1, § 12.04.

A report written by the psychologist who examined Champney, Dr. Robert Mullaly, indicates that she does have "marked curtailing of her activities of daily living," Tr. 191, but that she exhibited no difficulties in maintaining social functioning, id. In addition, Dr. Mullaly stated that Champney's "concentration, focus and attention do not seem to be disrupted, nor is there any cognitive impairment." Id. Finally, the doctor found that "[t]here is no mental deterioration or decompensation." Id.

As a result of Dr. Mullaly's report, it is clear that Champney did not exhibit a mental impairment or a combination of impairments listed in or medically equivalent to one listed in Appendix 1. Thus the court finds that the findings of the ALJ relative to this issue are supported by substantial evidence.

b. Step Four of the Sequential Evaluation Process

The final issue raised by Champney is that the ALJ lacked substantial evidence sufficient to conclude that Champney retained the RFC to return to her past relevant work, despite her medically determinable severe impairments. Champney argues that at step four of the sequential evaluation process, the burden is

9

on the Commissioner to prove that the claimant is able to return to her past relevant work. Here, Champney is wrong. It is settled law that the claimant bears the burden of proof throughout the first four steps of the sequential evaluation process. See Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982).

At step four of the process, the claimant must prove that her disability is serious enough to prevent her from working at her former job. Id. The ALJ determined that despite Champney's medically determinable severe impairments, she retained the RFC to return to her past relevant work. The ALJ's written decision states,

> Because the clinical findings and functional assessments of the claimant's treating physicians do not corroborate the claimant's allegations of pain which substantiate the presence of any credible limitations on the claimant's ability to perform a full range of light work, the undersigned concludes that the claimant's allegations of pain and subjective complaints are not entirely credible . . . .

Tr. 18.

In evaluating subjective complaints of pain, the ALJ is first required to determine whether

> [a]n individual's statement as to pain or other symptoms [is corroborated by] medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . .

10

42 U.S.C. § 423(d)(5)(A). If the existence of a medically determinable physical or mental impairment is established, the ALJ must then evaluate the effect of the symptoms on the individual's ability to perform basic work functions. S.S.R. 96-7P, 1996 WL 374186 *2 (S.S.A.); see also 20 C.F.R. § 404.1529(c)(1). However, "[t]he finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms [alone] does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms." Id.

In addition, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Id. at *2; see also Frustaglia v. Secretary of Health and Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (per curiam).

In evaluating the credibility of an individual's statements, Social Security regulations require the ALJ to consider the following factors in addition to objective medical findings,

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;

11

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *3; see also 20 C.F.R. § 404.1529 (c)(4); Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986).

In the instant case, the record indicates that the ALJ proceeded through the proper steps in evaluating Champney's subjective complaints of pain. The ALJ acknowledged the existence of an objectively identifiable medical impairment, severe chronic back pain secondary to left sciatic nerve injury, which could reasonably be expected to produce pain. Tr. 18. From there, the ALJ evaluated the extent to which Champney's symptoms limit her ability to perform basic work activities. At this step in his analysis, the ALJ concluded that Champney's symptomatic complaints were not consistent with the objective medical evidence. Tr. 17. Therefore, the ALJ properly considered the seven factors prescribed by 20 C.F.R. § 404.1529(c)(4) that are to be considered in addition to the

12

objective medical evidence when determining the credibility of an individual's statements about pain. Tr. 18.

Ultimately, the ALJ concluded that the clinical findings and functional assessments of the claimant's treating physicians did not support Champney's alleged limitations to her ability to perform her past relevant work as a data entry operator or as an inspector, both categorized as light work.[5]

The record indicates that there is substantial evidence to support the ALJ's conclusion. Specifically, Dr. Daniel Perri, to whom Champney was referred by her own physician, stated that Champney "does not have any restrictions on her physical activity." Tr. 181. Similarly, Dr. Theresa Little declared in regard to Champney's condition that "[t]his is treatable." Tr. 168.

_____

[5]20 C.F.R. § 404.1567(b) provides:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Finally, Dr. Ronald Resnick, to whom Champney was referred in hopes of receiving a medical opinion more favorable to her claim for disability, concluded that while Champney could not return to her regular job (waitress), she could perform work that allowed her to sit and stand as needed. Tr. 209. Thus Dr. Resnick's report does support the conclusion that Champney could perform the work required by her previous occupations as a data entry operator or an inspector, which allowed her to alternate positions.

After careful review, this court finds that the evidence cited by the ALJ does constitute substantial evidence and that the ALJ's decision therefore must stand. It is settled law within the First Circuit that "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d at 769 (1st Cir. 1991). Moreover, "the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Id.

### Conclusion

Because each of the findings of the ALJ, including his ultimate conclusion that the plaintiff was not disabled, was based on substantial evidence, this court is not entitled to reverse those decisions. Therefore, plaintiff's motion for an

14

order reversing the decision of the Commissioner (document no. 7) is denied, and defendant's motion for an order affirming said decision (document no. 8) is granted.  The clerk shall enter judgment accordingly.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

February 10, 1999

cc:  Michael C. Shklar, Esq.
     David L. Broderick, Esq.